IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TERRANCE D. SWANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 3:14-CV-1889 RM |
| | ) | |
| BARBARA A. BRUBAKER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

The defendants seek summary judgment on Terrance D. Swann's claims that Nurses Barbara Brubaker, Joelynn Bigheart and Ryann Moore denied him adequate medical care in violation of the Eighth Amendment. Because Mr. Swann hasn't pointed to evidence from which a reasonable trier of fact could decide that any of the defendants violated his Eighth Amendment right to adequate medical care, summary judgment will be granted in favor of the defendants.

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. To determine whether a genuine issue of

material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion can't rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party doesn't establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006).

Mr. Swann is an inmate in the Indiana Department of Corrections. Dr. Joseph Thompson, M.D., saw him in June 2013, when he was in the Indiana State Prison for complaints of lumps on his testicle and urination issues. He was examined and given a six month prescription for Cardura[1] to alleviate these symptoms. Mr. Swann was transferred to the Westville Control Unit at the Westville Correctional Facility.

Defendants Joelynn Bigheart and Ryann Moore were licensed practical nurses at Westville, and defendant Barbara Brubaker was a nurse practitioner. Inmates housed in the WCU were checked daily by various medical personnel and

---

[1] The generic name is doxazosin mesylate, which is a medication that relaxes blood vessels so that blood can flow more easily. This can help make it easier to urinate. See Cardura, WEBMD, www.webmd.com/drugs2/drug-3710/cardura-oral/details. (Last visited Jan. 7, 2015).

a notation was to be made on the inmate's segregation flow sheet indicating whether they had any complaints. Mr. Swann's segregation flow sheet indicates that he made no complaints of pain from his transfer in August 2013 through the end of 2014 (the period covered by Mr. Swann's complaint). Nurse Brubaker renewed Mr. Swann's six month prescription of Cardura. Mr. Swann says often made fun of his body odor when she delivered his Cardura.

In March, 2014, Mr. Swann completed a healthcare request form making his first complaint that he was having digestive "complications" that he believed his medication was causing. Nurse Moore addressed his request. Mr. Swann received a physical examination indicating no abnormalities and he was referred to Dr. Liaw, an upper level provider. At Dr. Liaw's direction, Nurse Moore provided Mr. Swann with a prescription of Colace, told him to increase his activity and fluid levels and to return to sick call if his symptoms didn't subside or became more severe.

Mr. Swann completed a health care form asking whether he was being seen by a doctor, saying he had gotten a pill that he didn't know about, and stating that Nurse Moore hadn't responded to his complaint about Nurse Bigheart. Mr. Swann repeated his concerns when Nurse Moore saw him. Nurse Moore, who didn't know about Mr. Swann's complaints concerning other medical personnel, examined him, noted that he reported a 0/10 pain score, reinstructed him on his Colace prescription, and told him to address any concerns about Ms. Bigheart to the facility's Health Service Administrator.

Mr. Swann's March 2014 segregation flow sheet indicates reflects no complaints about pain, being seen by medical people, or about his medication. Mr. Swann sent in an April health care form complaining about blood in his stool; the medical unit didn't get the form until May 7 because it came through the WCU mailbox, which move things significantly more slowly. Another early April health care form about Mr. Swann's getting sick from his medications were making him sick didn't get to medical people through the WCU mailbox on May 7. Still in April, Mr. Swann sent a health care form asking about his current medication. He got the information soon after, his Cardura prescription continued through April.

Nurse Brubaker saw Mr. Swann in May about his hard stools, blood in his stool, abdominal pain, worry that his medication was causing his symptoms, and concern that he might have a tapeworm. She gave him a full physical examination, found no abnormalities, and ordered lab work, blood testing, and testing of his stool. Mr. Swann's Cadura was discontinued immediately and Nurse Brubaker ordered Lactulose[2] for him. When the blood work was done, Nurse Brubaker referred the matter to an upper level provider to discuss the results. when all labs were completed.

Nurse Moore examined Mr. Swann in early June. Mr. Swann gave a stool specimen, refused testing for tuberculosis, and was given information about prostate and testicular testing. He made no complaints of not being seen by medical people or experiencing pain. The examination revealed no abnormality,

---

[2] Lactulose is a medication used to treat constipation.

and Mr. Swann was referred to a provider for his complaints of possible weight loss, constipation, and fear of having a tapeworm. Nurse Brubaker reordered testing of Mr. Swann's stool. Dr. Liaw saw Mr. Swann for his complaints of constipation and abdominal pain, and Dr. Liaw noted not only was that Mr. Swann's weight stable, but that he had actually gained weight "in the past few weeks." Dr. Liaw found Mr. Swann normal upon examination, reordered stool testing, and told Mr. Swann he should increase his fiber intake and fluids for his constipation, that he should monitor his weight and submit a health care form if he had any other issues.

Mr. Swann asked for copies of his lab results in July, and was told he needed to pay for copies. He made no complaint of pain or of not being seen by medical on that date.

On August 1, Mr. Swann asked to see an upper level provider for rectal pain, but the system was down, so the request wasn't entered immediately; Mr. Swann later submitted a health care form complaining of digestion complications and body odor. Dr. Sebastian S. Jaeger, responded that Mr. Swann's labs had all indicated negative and showed no evidence of rectal bleeding or blood loss, and that if the symptoms persisted, Mr. Swann might want to talk about his issues with behavioral health professionals.

Dr. Jaeger saw Mr. Swann again later in August about rectal pain and GI complaints, and requests for a "colon cleanse" and something to address his body odor. Dr. Jaeger noted that all of Mr. Swann's testing, including stool occult and

parasitic testing, were negative. Mr. Swann said lactulose had helped with constipation before. Dr. Jaeger ordered Colace and Zantac to alleviate his symptoms and then discussed a consult with behavioral health personnel with Mr. Swann to assist in addressing his issues.

A week later, Mr. Swann sent a letter about his "digestion complications."

Inmates have a constitutional right to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjecting component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if a physician has diagnosed it as mandating treatment, or is so obvious that even a lay person would easily recognize the need for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (internal citation omitted).

To be held liable for deliberate indifference to an inmate's medical needs, the medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to

demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). A mere disagreement with medical professionals doesn't establish deliberate indifference, nor does negligence or even medical practice, since "the Eighth Amendment does not codify common law torts." Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011). Prisoners aren't entitled to demand specific care, nor are they entitled to the "best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). When an inmate has received some form of treatment for a medical condition, to establish deliberate indifference he must show that the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition."Arnett v. Webster, 658 F.3d at 751. Mr. Swann alleges each of the three defendants were deliberately indifferent to his  medical needs.

First, Mr. Swann alleges Nurse Brubaker was deliberately indifferent to his medical needs when she renewed his six month prescription of Cardura without first interviewing him. Mr. Swann believes this violated Corizon's policies and procedures. Focus on Corizon's policies is misplaced. Whether Nurse Brubaker followed Corizon's policies is a far different question than whether she violated his Eighth Amendment rights. Violation of a prison policy does not, by itself, establish a constitutional violation. Bradich ex rel. Estate of Bradich v. City of Chicago, 413 F.3d 688, 690 (7th Cir. 2005).

Nurse Brubaker wasn't deliberately indifferent when she renewed his prescription. She had no indication that continuing Mr. Swann's Cardura

prescription was inappropriate or detrimental to him in any way. Dr. Joseph had prescribed it for Mr. Swann, he had made no complaints about taking the medication at that point, and he voluntarily continued to take the medication as prescribed. From all indications, Nurse Brubaker renewed his prescription in an effort to care for Mr. Swann. There was no known risk in Nurse Brubaker renewing Mr. Swann's Cardura prescription, and no evidence suggests that her decision to renew his prescription was "blatantly inappropriate."Arnett v. Webster, 658 F.3d at 751. No jury could find her to be deliberately indifferent for doing so on this record. Id.; Duckworth v. Ahmad, 532 F.3d 675, 680 (7th Cir. 2008) (citations omitted).

Second, Mr. Swann alleges Nurse Brubaker was deliberately indifferent because she didn't discontinue his Cardura sooner. A delay in treatment can, in some instances, establish deliberate indifference, McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010), but Nurse Brubaker didn't delay any treatment. Mr. Swann first complained of his medication in March, and was seen and treated by Nurse Moore and Dr. Liaw. Neither of those healthcare providers thought the Cardura was harming Mr. Swann. He filled out two more health care forms complaining about his medication, but the defendants didn't receive them for weeks through the WCU mailbox. All the evidence in this record shows that Nurse Brubaker didn't know of Mr. Swann's complaints before she examined him in Early May, when she learned of his complaints and immediately discontinued Cardura, had Mr. Swann examined, and prescribed an alternative medication.,

Nurse Brubaker discontinued his Cardura as soon as she learned he thought it was causing him pain. Because Nurse Brubaker wasn't involved in causing any delay in discontinuing Cardura, she can't be held liable for any delay. Dunville v. Morton, 234 F.3d 1272 (7th Cir. 2000).

Mr. Swann complains that Nurse Bigheart was rude to him while she passed out his medication, calling him names and making fun of his body odor. Verbal harassment of this sort might be unprofessional, but isn't a violation of the constitution. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (observing that verbal harassment or rude comments by prison staff does not violate the Constitution); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987) (unprofessional conduct does not violate the Constitution). Accordingly, this defendant will be dismissed.

Mr. Swann says Nurse Moore was deliberately indifferent when she failed to respond to the health care form in which he raised questions about his medication. Mr. Swann wanted to know what medication he was on, how long he would be on it, and whether it is supposed to address all of his symptoms. Nurse Moore informed him – not as quickly as Mr. Swann wanted – that the medication was Colace, that he would take it for seven days, and that it was a stool softener.

Nurse Moore didn't delay any treatment. If she delayed anything, it was telling Mr. Swann about his medication. No evidence in the summary judgment motion would support an inference that Nurse Moore's five-day delay in answering Mr. Swann's questions caused him any harm, Williams v. Liefer, 491 F.3d 710,

714-715 (7th Cir. 2007), so it doesn't amount to an Eighth Amendment violation. Ford v, Ghosh, 2014 WL 4413871, *7 (N.D. Ill., Sept. 8, 2014).

Finally, in deciding whether the defendants were deliberately indifferent to Mr. Swann's medical needs, it's appropriate to "examine the totality of an inmate's care when considering whether that care evinces deliberate indifference. . .." See Reed v. McBride, 178 F.3d 849, 855 (7th Cir. 1999) (quotation omitted); Gutierrez v. Peters, 111 F.3d 1364, 1375 (7th Cir. 1997). In Gutierrez, the plaintiff received treatment over a ten-month period and at most experienced an "isolated occasion or two where he did not receive prompt treatment." 111 F.3d at 1374. Even when he couldn't see healthcare providers as soon as he wanted, he still received medicine and other prescribed treatments. Id. at 1375. Balanced against the extensive treatments he received, the occasional delays he complained of were "simply isolated instances of neglect, which taken alone . . . cannot support a finding of deliberate indifference." Id.

Mr. Swann, too, received extensive, prolonged treatment from his arrival at Westville. He was consistently seen and treated by nurses and doctors alike. He also underwent a battery of tests and examinations and was prescribed various medications in an effort to deal with his complaints. The segregation flow sheets also demonstrate that Mr. Swann was seen regularly and routinely reported no complaints of pain. Ultimately, the record reveals the defendants provided Mr. Swann with steady medical care of his stomach pains, constipation and perceived foul odor. Nothing in the summary judgment record would support an inference

that there were any delays that could be attributable to deliberate indifference. At most, as in <u>Gutierrez</u>, there might have been a few instances of neglect, which don't rise to the level of an Eighth Amendment violation.

After the briefing of this motion concluded, Mr. Swann filed a motion to amend his response brief. Mr. Swann is concerned that his response doesn't comply with the court's local rules, and he wants to amend his response so that he can comply with them. That's not necessary. The court understands that the plaintiff if trying to represent himself, and so hasn't held any formatting shortcomings against him. Mr. Swann also seeks more time to obtain his medical records. Many of his medical records are already part of the record, and Mr. Swann hasn't explained why any more records would be necessary or relevant. Nor is there any indication that those records would change the outcome of the summary judgment motion. Because Mr. Swann hasn't shown any need or benefit to amending his response brief, the court denies his motion.

For these reasons, the court GRANTS the defendants' motion for summary judgment[3] (DE 83), and DENIES the motion to amend (DE 103). The clerk shall enter judgment for the defendants.

SO ORDERED.

ENTERED: January 25, 2016.          /s/ Robert L. Miller, Jr.
                                    Judge

---

[3] The defendants ask the court to decline to exercise supplemental jurisdiction over any of Mr. Swann's state law claims because the federal claims have be dismissed. Mr. Swann wasn't granted leave to proceed on any state law claims, and the screening order didn't find any state law claims to have been asserted.

United States District Court